UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAFRY PENA,

                                    Plaintiff,

                                                            9:20-CV-0481
            v.                                              (TJM/TWD)

STATE OF NEW YORK, et al.,

                                    Defendants.

_____

APPEARANCES:

JAFRY PENA
18-R-1775
Plaintiff, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021


THOMAS J. McAVOY
Senior United States District Judge

## DECISION AND ORDER

### I.      INTRODUCTION

        Plaintiff Jafry Pena commenced this action by filing a pro se civil rights complaint

pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to

proceed in forma pauperis.  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application").  By Decision

and Order filed on May 27, 2020, plaintiff's IFP Application was granted, but following review

of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), this Court

found that it was subject to dismissal for failure to state a claim upon which relief may be

granted.  Dkt. No. 4 ("May 2020 Order").  In light of his pro se status, plaintiff was afforded an

opportunity to submit an amended complaint.  *Id*. at 10-12.

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 5 ("Am. Compl.").


**II.   SUFFICIENCY OF THE AMENDED COMPLAINT**

**A.   The Complaint and May 2020 Order**

In his original complaint, plaintiff asserted claims based on alleged wrongdoing that occurred while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Auburn Correctional Facility ("Auburn C.F.").  *See generally* Compl.  More specifically, plaintiff alleged that he was held in involuntary protective custody while incarcerated at Five Points Correctional Facility because "security deemed [his] life . . . in danger[,]" but following his transfer to Auburn C.F., "was cleared by . . . security[.]"  Compl. at 4.  Plaintiff further alleged that on March 11, 2020, he was "cut from behind" by an unknown inmate while in the prison yard because "security" failed to locate the  weapon despite "search[ing] everybody" before they entered "the main yard[.]" *Id*.

Plaintiff named the following individuals as defendants: (1) Auburn C.F. Superintendent T. McCarthy; (2) Deputy Superintendent of Security J. Corey; and (3) Security Captain Norris.  Compl. at 1-3.

The complaint was construed to assert an Eighth Amendment failure-to-protect claim against the defendants.  *See* May 2020 Order at 5.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's Section 1983 claim was dismissed without prejudice for failure to state a claim upon which relief may be granted.  *See* May 2020 Order at 10-12.

**B.   Overview of the Amended Complaint**

2

Plaintiff's amended complaint re-asserts Eighth Amendment failure-to-protect claims against the same three defendants named in the original complaint, in their individual and official capacities, and contains additional allegations in support of these claims.  *See generally*, Am. Compl.  The following new facts are set forth as alleged by plaintiff in his amended complaint.

Plaintiff was held in involuntary protective custody while at Five Points Correctional Facility due to "threats from unknown prisoners against his life."  Am. Compl. at 3.  Plaintiff was transferred to Auburn C.F. on March 9, 2020.  *Id*.

Upon arriving at Auburn C.F., plaintiff was "placed on routine quaranteen [sic] for . . . 3 days in general population[,] no longer under the protection of his previous involuntary protective custody status from Five Points Correctional Facility[.]"  Am. Compl. at 4.  During plaintiff's "quaranteen status" he wrote three separate letters addressed to defendants McCarthy, Corey, and Norris.  *Id*.[1]  In his letters, each dated March 9, 2020, plaintiff "clearly stated he felt his life was in danger and he should not be in general population."  *Id*. However, the defendants "failed to take any preventative measures to ensure plaintiff[']s safety[.]"  *Id*.

On March 11, 2020, plaintiff spoke with defendant McCarthy during his "daily rounds" and "inquired . . . about his letter . . . and also expressed his concerns regarding his . . . safety in general population."  Am. Compl. at 4.  Later that day, plaintiff was "released from quaranteen [sic] . . . despite his numerous letters and vocal concerns, . . . and cleared by

---

[1]  In the "Parties" section of the complaint, plaintiff alleges that defendant McCarthy is responsible for "operating and managing the prison[']s day to day operations and executing its policies[,]" defendant Corey is responsible for "operating and managing the security staff at the prison[,]" and defendant Norris is responsible for "operating and managing the security at the prison."  Am. Compl. at 2.

security to [enter] general population." *Id*. at 4-5.

Thereafter, "security staff" conducted "searches on all inmates entering the yard[,] checking for weapons, drugs, and other general contraband." Am. Compl. at 5. Despite the searches, plaintiff was subsequently "cut from behind . . . by an unknown inmate" while waiting to use the phone. *Id*. Plaintiff suffered a 5.5 inch laceration on the right side of his face. *Id*.

Following the attack, plaintiff was "taken to medical" for treatment, and was then escorted to the special housing unit ("SHU") despite not receiving a misbehavior report. Am. Compl. at 5. Plaintiff remained in the SHU for an unidentified amount of time.[2]

Plaintiff seeks monetary, declaratory, and injunctive relief. Am. Compl. at 3, 6. For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

## C.   Analysis

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the May 2020 Order and it will not be restated in this Decision and Order. *See* May 2020 Order at 2-4.

---

[2] As in the original complaint, plaintiff alleges in the amended complaint that he suffered certain deprivations during his SHU confinement. *See* Am. Compl. at 5-6. However, the amended complaint once again lacks any allegations regarding the duration of plaintiff's confinement in the SHU, or which plausibly suggest that any of the named defendants were responsible for his SHU confinement. As a result, the Court does not construe the allegations in the amended complaint to assert any constitutional claims against any of the named defendants arising out of plaintiff's SHU confinement, and therefore will not analyze these allegations further.

### 1. Official Capacity Claims

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");  *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890);  *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997);  *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's amended complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977);  *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment);  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.");  *Severino v. Negron*,

996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.")

Accordingly, to the extent that plaintiff seeks monetary damages under Section 1983 against any of the defendants in their official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.[3]

## 2. Eighth Amendment Claims

The legal standard governing an Eighth Amendment failure-to-protect claim was discussed at length in the May 2020 Order and will not be restated herein.  *See* May 2020 Order at 8-10.  The Court will add only that a failure-to-protect claim may be based on allegations that "'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.'"  *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842-43 (1994)); *see also Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620-21 (2d Cir. 1996) (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact).  In addition, "Courts have found that a

---

[3] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

prisoner validly states an Eighth Amendment claim based on a failure to protect when he

alleges that he informed corrections officers about a specific fear of assault and is then

assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2,

2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012);

*see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26,

2008) (denying summary judgment where plaintiff presented evidence that he informed

sergeant of correction officers' threatening behavior and was later assaulted by those

officers).

     "On the other hand, an inmate's communications about 'generalized safety concerns'

or 'vague concerns of future assault by unknown individuals' are insufficient to provide

knowledge that the inmate is subject to a substantial risk of serious harm." *Stephens v.

Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at *19 (S.D.N.Y. Feb. 24, 2016) (quoting

*Ross v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at *8 (S.D.N.Y. 2014), *rev'd

on other grounds*, No. 14-3327 (2d Cir. July 20, 2015) (summary order)), *report and

recommendation adopted sub nom. Stephens v. Venettozzi*, 2016 WL 1047388 (S.D.N.Y.

Mar. 10, 2016).  Moreover, "[n]either mere negligence nor a prison guard's mere failure to act

reasonably is enough to state an Eighth Amendment deliberate indifference claim." *Sawyer

v. New York State Dept. of Corr. Servs*., No. 11-CV-0152, 2015 WL 6644112, at *7 (W.D.N.Y.

June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)),

*report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct.

28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect

cases, a prisoner normally proves actual knowledge of impending harm by showing that he

complained to prison officials about a specific threat to his safety. Mere negligence (for

example if a prison guard should know of a risk but does not) is not enough . . . .").

Insofar as plaintiff's Eighth Amendment claims are based on defendants' alleged failure to take preventative measures in response to plaintiff's expressed safety concerns, the amended complaint, like the original complaint, lacks any allegations explaining the basis of plaintiff's fear for his safety, let alone what he communicated to defendants about the basis for his concerns.  For example, plaintiff does not allege that he had been threatened by one or more inmates at Auburn C.F. before he was "cut," was a current or former member of a gang, was victim prone, was previously assaulted by one or more inmates, or was otherwise involved in one or more activities that placed him at risk of harm following his transfer to Auburn C.F.  Plaintiff also does not allege any facts which plausibly suggest that he had an inherent vulnerability such that an inference could be drawn that the basis for his fear was obvious.  Nor does plaintiff allege any facts which plausibly suggest that the overall environment at Auburn C.F. placed all inmates at a substantial risk of serious harm on March 11, 2020.

Thus, the Court can plausibly infer from the allegations in the amended complaint only that defendants were aware that plaintiff had general concerns for his safety following his transfer to Auburn C.F.  As noted, defendants' awareness of plaintiff's general safety concerns is not a basis to plausibly infer that these officials were aware that placing plaintiff in general population subjected him to a substantial risk of serious harm.  *See Stephens*, 2016 WL 929268, at *19; *Ross*, 2014 WL 3844783, at *8 (noting that an inmate's communications about "generalized safety concerns" or "vague concerns of future assault by unknown individuals" are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm (citing *Rivera v. New York*, No. 96-CV-7697, 1999 WL 13240, at *9

8

(S.D.N.Y. Jan. 12, 1999)), *rev'd on other grounds*, 610 Fed. Appx. 75 (2d Cir. 2015) (summary order); *Brown v. Chappius*, No. 13-CV-0105, 2016 WL 11594225, at *6 (W.D.N.Y. Aug. 11, 2016) ("[G]eneral and conclusory assertions that an inmate fears for his safety . . . are insufficient to put correctional facility officials on notice of a substantial risk of serious harm[.]"), *report and recommendation adopted by* 2019 WL 2177023 (W.D.N.Y. May 20, 2019); *Sawyer*, 2015 WL 6644112, at *6-7 (dismissing failure-to-protect claim asserted against official who received inmate's grievance expressing fear for his safety based on other inmates calling him a "rat" and a "snitch," even though plaintiff alleged he was assaulted following an investigation of the grievance by another official, noting that the amended complaint and documents attached thereto failed to "reveal that Plaintiff ever asserted a physical attack was imminent such that [the official who received plaintiff's grievance] cannot be found to have known that Plaintiff was being threatened by certain inmates with actual or imminent harm" (internal quotation mark and citation omitted)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Fernandez v. New York City Dep't of Correction*, No. 08-CV-4294, 2010 WL 1222017 at *4 (S.D.N.Y. Mar. 29, 2010) (Wood, D.J.) (absent clear notice of a risk of harm to the prisoner, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks").

Furthermore, insofar as the amended complaint may be construed to assert failure-to-protect claims against the named defendants under a theory of supervisory liability based on the alleged failure of "security staff" to locate the weapon used to "cut" plaintiff, the amended complaint lacks any allegations regarding the efforts undertaken to search inmates entering the prison yard.  However, even if the Court were to assume that the failure to locate the weapon used to "cut" plaintiff was a result of negligence, the law is well-settled that

9

negligence does not give rise to a cognizable Section 1983 claim. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) ("Deliberate indifference requires more than negligence . . . .") (citations omitted), *cert. denied*, 513 U.S. 1154 (1995).  Thus, the amended complaint also fails to state an Eighth Amendment claim against the named defendants based on the alleged inadequate search by prison staff.  *See Guillory v. Haywood*, No. 9:13-CV-01564 (MAD), 2015 WL 268933, at *22 (N.D.N.Y. Jan. 21, 2015) ("[A] complaint that fails to state a claim for the underlying unlawful conduct also fails to state a claim against supervisory officials with respect thereto."); *Linares v. Mahunik,* No. 9:05-CV-625 (GLS/RJT), 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006), *report and recommendation adopted by* 2006 WL 2595200, at *1 (plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation"); *Johnson v. McClure*, No. 9:06-CV-0431 (GTS/DEP), 2009 WL 2356147, at *20 (N.D.N.Y. May 11, 2009) ("Rather than providing an independent basis for a cause of action, supervisory liability on the part of any of the defendants is more appropriately considered in the context of each of the substantive constitutional claims raised in the case. Since I have recommended dismissal of each of those claims, there is therefore no basis to find supervisory liability in connection with any of them."), *report and recommendation adopted by* 2009 WL 2356147, at *1-3 (N.D.N.Y. July 28, 2009).

Based on the foregoing, plaintiff's Eighth Amendment failure-to-protect claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III.    NATURE OF THE DISMISSAL

In light of the above, the Court finds that the amended complaint fails to state one or

more claims upon which relief may be granted by this Court.  Although plaintiff has already

been afforded an opportunity to amend, in light of plaintiff's pro se status, and out of an

abundance of solicitude, the Court will afford plaintiff a final opportunity to file a second

amended complaint not inconsistent with this decision.  *See Gomez v. USAA Fed. Savings*

*Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  Any amended complaint filed by plaintiff must bear

his original signature, and must be a complete pleading which will supersede and replace the

operative pleading in its entirety.  Plaintiff must name one or more defendants, and must set

forth a short and plain statement of the facts he relies on in support of his claim that the

individuals named as defendants engaged in misconduct or wrongdoing that violated

plaintiff's constitutional rights.

Plaintiff is forewarned that, if he fails to submit a second amended complaint within

thirty (30) days of the filing date of this Decision and Order, the Court will, without further

order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28

U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

IV.     **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 5) does not cure the pleading

deficiencies identified in the May 2020 Order and is dismissed in accordance with 28 U.S.C. §

1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief

may be granted; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action with respect to the claims

that were dismissed without prejudice, he must file a second amended complaint as directed

11

above within thirty (30) days from the filing date of this Decision and Order; and it is further

ORDERED that, if plaintiff timely files a second amended complaint, this matter be returned to the Court for further review; and it is further

ORDERED that if plaintiff fails to timely file a second amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) due to plaintiff's failure to state a claim upon which relief can be granted and to comply with the terms of this Decision and Order, without further order of this Court; and it is further

ORDERED that upon the filing of plaintiff's second amended complaint this matter be returned to the Court for further review; and it is further

ORDERED that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

ORDERED that the Clerk shall serve a copy of this Decision and Order on plaintiff.
**IT IS SO ORDERED.**

12

Dated: June 24, 2020
      Binghamton, NY

Thomas J. McAvoy
Senior, U.S. District Judge